IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *Plaintiff,* v. **[4] JOSUE FIGUEROA-LOPEZ, a/k/a "Pachín,"** *Defendant.* | **CRIMINAL NO. 22-440 (DRD)** |

**OPINION AND ORDER**

Pending before the Court is Defendant, Josue Figueroa-Lopez's *Amended Motion Requesting Review of Detention Order and Request for a De Novo Detention Hearing. See* Docket No. 94. The Government filed a *Response in Opposition* thereto. *See* Docket No. 116. As such, on January 27th and 30th, 2023 a *de novo* bail hearing was held wherein the Court heard the parties' arguments in favor and against granting bail to Figueroa-Lopez pending trial. After having heard the parties, the Court **AFFIRMS** Honorable Magistrate Judge Giselle Lopez-Soler's denial of bail pending trial and accordingly **DENIES** Figueroa-Lopez's bail request pursuant to the standards of the Bail Reform Act until the verdict in this case. *See* 18 U.S.C. § 3143.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On October 28, 2022, a Grand Jury returned a Forty-One (41) Count Indictment charging Figueroa-Lopez and seven (7) other codefendants with violations to 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1344 (bank fraud); 18 U.S.C. § 1349 (conspiracy to commit bank and wire fraud); 18 U.S.C. § 1029(a)(5) (access device fraud); 18 U.S.C. § 1028A (aggravated identity theft); and 18 U.S.C. § 1956(h) (conspiracy to commit money laundering). *See id.* All charges

stem from a fraud scheme beginning on a date unknown but not later than in or around October 2021 continuing until the date of the return of the indictment wherein the defendants, engaged in a scheme and artifice to defraud monies, funds and credits of Banco Popular, FirstBank Puerto Rico, and Oriental Bank, and under the custody of said institutions through false and fraudulent pretenses, representations, and promises. *See id.* at ¶ 9.

Essentially, the defendants conspired to assume false identities, including those of law enforcement agents and bank officials in order to contact customers of financial institutions and falsely inform them that their bank account information has been compromised. As a result thereof, the individuals would be induced to provide their physical credit/debit cards and PIN numbers by falsely claiming that doing so would facilitate restoring the integrity of their accounts. *See id.* at ¶ 10. The defendants would then use, possess, and transfer the names, debit cards, and PIN numbers of third persons to make financial transactions without their knowledge and consent. *See id.* at ¶ 11. These cards were used to withdraw money from automatic teller machines ("ATM") and purchase money orders at the United States Postal Service locations throughout Puerto Rico. *See id.* ¶ 12. And ultimately, cash purchases were made of over $40,000.00 worth of jewelry at various locations in New York with the proceeds obtained from the fraudulent purchases of money orders, which would then be sold at a store operated in Puerto Rico, as a means to launder the money obtained from the fraudulent scheme. *See id.* at ¶ 16.

Figueroa-López was ultimately arrested on November 8, 2022. On that same date, federal agents searched his residence and the automobiles they had observed him driving pursuant to a federal arrest warrant. *See id.* at p. 2. During the execution of the search warrant,

"the agents discovered evidence linking Figueroa to the charged scheme, including debit cards issued to persons with no known connection to Figueroa." *Id.* Additionally, they found and seized inside a vehicle that Figueroa had been observed driving during surveillances, "rifle rounds and .933 rounds of ammunition, high-capacity magazines, and a piece of fabric stating 'POLICE.' *Id.*; *see also* Gov. Exhibit No. 9.

A *Bail Hearing* was held wherein Magistrate Judge Lopez-Soler heard the parties' arguments in favor and against detention, but ultimately ordered the defendant be detained pending further proceedings. *See* Docket Nos. 63 and 67.

As a result thereof, the Defendant filed the instant *Amended Motion Requesting Review of Detention Order and Re*. *See* Docket No. 94. The Defendant essentially argues that "[t]he evidence to be submitted at the *de novo* hearing supports [his] release pending trial, and not that there is a risk that [he] will endanger the safety of the community, let alone a 'serious risk' as stated in the Detention Order." Docket No. 94 at ¶ 4. Additionally, Figueroa-Lopez claims that the following factors weigh in favor of release pending trial: (1) a diagnosis for emotional disturbance and depression since he was 13 years old which has included a hospitalization in a mental institution due to a severe major depression; and (2) the defendant's mother, Jessenia Lopez-Cruz is willing to house and be his third-party custodian. *See id.* at ¶¶ 5-6.

In turn, the Government argues that "[a] consideration of the section 3142(g) factors should lead this Court to the same conclusion the magistrate judge reached: Figueroa should remain detained pending trial." Docket No. 116 at p. 5.

## II.   THE STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3141, et seq., allows detention when "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community . . ." 18 U.S.C. §§ 3142(b) and (e). Essentially, "[t]he government must establish risk of flight by a preponderance of the evidence; and/or dangerousness by clear and convincing evidence." *United States v. Mieses-Casiano*, 161 F. Supp. 3d 166, 167 (D.P.R. 2016); *see United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir.2001); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir.1991).

Once probable cause is found that a defendant has committed an offense as listed on § 3142(e)(2), a "rebuttable presumption arises that no condition or combination of conditions exist that will reasonably assure the appearance of the defendant and the safety of the community." In order for a defendant to remain detained, the government must establish either risk of flight by a preponderance of the evidence or danger to the community by clear and convincing evidence. 18 U.S.C. § 3142(f); *see United States v. Patriarca*, 948 F.2d 789, 790 (1st Cir. 1991). "[T]he presumption serves to shift the burden of production and to require that the defendant introduce 'some evidence' to the contrary." *United States v. O'Brien*, 895 F.2d 810, 815 (1st Cir. 1990). However, "the government retains the burden of proving that no conditions will reasonably assure the defendant's appearance." *Id.* Notwithstanding, the First Circuit has cautioned that "[t]he presumption [] does not cease to have effect once the defendant has come forward with some evidence. Instead, it continues to operate as one factor

4

to be considered by the court in determining whether the defendant must be detained." *Id.*; *see United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985).

Finally, in making its final determination after receiving the rebuttal pursuant to § 3142(g), the judicial officer must consider among other statutory factors "the nature and circumstance of the offense," "weight of the evidence," "history and characteristics of the person including . . . character, physical and mental condition, family history . . . past conduct" and the "danger posed to the community" by his release. *See United States v. Patriarca*, 948 F.2d at 791-92.

Upon review, the Court finds that the statutory presumption does not apply here as the defendant is not charged with an applicable offense. Said offense is not listed in §§ 3142(e)(2) and (3), as an offense in which the detention presumption is applicable. However, pretrial detention is authorized pursuant to § 3142(f)(1)(E) as to "any felony that is not otherwise a crime of violence that involves . . . the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon . . ." In any event, pretrial detention is also authorized when there is "a serious risk that [the defendant] will flee." 18 U.S.C. § 3142(f)(1).

The Court held a *de novo* hearing on January 27th and 30th, 2023. *See* Docket Nos. 121-122. The defendant was represented by counsel Rosa I. Bonini-Laracuente. The United States was represented by AUSA Alexander Alum. The Court proceeded via proffer, as authorized by *United States v. Acevedo Ramos*, 755 F.2d 203, 208 (1st Cir. 1985) (authorizing proceeding via proffer of evidence based on Congressional intent citing the House of Judiciary Committee HR.

5

Rep. No. 97, 91 Congress 2nd Session, 182, 184 (1970). Thus, the Court proceeds to examine the criteria under the law at 18 U.S.C. § 3142(g)(1),(2),(3),(4).

### III.   LEGAL ANALYSIS

1. *Nature and circumstances of the charged offense*

The defendant is charged for offenses related to 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1344 (bank fraud); 18 U.S.C. § 1349 (conspiracy to commit bank and wire fraud); 18 U.S.C. § 1029(a)(5) (access device fraud); 18 U.S.C. § 1028A (aggravated identity theft); and 18 U.S.C. § 1956(h) (conspiracy to commit money laundering). *See* Docket No. 31. These are serious offenses in which Figueroa-López impersonated law enforcement officials to debit cards from the victims and then impersonated such victims in conducting fraudulent transactions. *See* Gov. Exhibit Nos. 6, 9-10, 29 and 31. The Court cannot overlook the fact that many of the victims were elderly individuals who rely on their limited pension and social security deposits in order to support themselves. *See* Gov. Exhibit No. 26.

Importantly, Figueroa-López is currently exposed to a potential term of imprisonment of thirty (30) years for the bank fraud offense pursuant to 18 U.S.C § 1344, and a mandatory minimum sentence of 24 months on the aggravated identity theft count, which runs consecutively to any other sentence imposed. *See* 18 U.S.C. § 1028A.

2. *The weight of the evidence*

The weight of the evidence against Figueroa-López is strong. The Government has proffered evidence such as images of the defendant and other codefendants purchasing money orders in the U.S. Postal Service Station at Plaza Las Américas with a victim's debit card within minutes from each other. *See* Gov. Exhibit Nos. 5-7. Additionally, the Government provided the

testimony of U.S. Inspector, Jean Bodner, who was present when the search warrant was executed. In sum, he testified as to the items that were seized from the defendant's residence and the automobile that he was driving while in surveillance. Specifically, the search warrant was targeted to finding evidence related to the fraud scheme and any apparent illegal material. Among the items that were seized were two (2) cellular phones from which photos of firearms were retrieved. *See* Gov. Exhibit Nos. 11, 12, 17, 20-23.

Given the substantial weight of the evidence against the defendant, a conviction with a lengthy imprisonment sentence in this case is likely. Such exposure weighs in favor of detaining Figueroa-López pending trial.

3. ***The history and characteristics of the defendant***

Pursuant to the Pretrial Services Report (Docket No. 56), Figueroa-López has no prior convictions. He has a previous charged offense for domestic violence wherein no probable cause was found. He possesses a high school diploma, and has completed a one-year barber course at the Modern Hairstylist Institute located in Bayamón, Puerto Rico. *See id.*; *see also* Docket No. 94 at ¶ 11. He works as an independent barber at the customers' house. He has also worked with his mother in wedding planning events. *See id.* In addition, the U.S. Probation Officer recommended that the defendant be released on bail pending trial and under the supervision of his mother, Yesenia Lopez-Cruz. *See* Docket No. 56. These elements favor release.

However, the Court is concerned that Ms. López-Cruz works from Mondays through Fridays from 7:30 a.m. until 3:00 p.m. as a social worker in the Department of Housing Authority. Therefore, the defendant would spend approximately eight (8) hours per day

without supervision. López-Cruz further argued that her 20-year-old daughter, Cristal Figueroa-López could supervise the defendant while she was at work, as she is currently taking online college classes and does not work. She also claimed that her mother, Ramonita Cruz, and Miranda Cruz live nearby and can cover for her while at work. Likewise, the defendant argues that electronic monitoring serves as guarantee that he will not abscond and will abide with the conditions of supervised release while awaiting trial.

### 4. *Risk of danger to the community*

Upon the defendant's arrest, the agents discovered rifle rounds and .9mm rounds of ammunitions from the car he was seen driving during surveillance. But no firearms were found. However, the Government proffered photographs of Figueroa-López holding a firearm, of firearms, and magazines from the warrant-based search of Figueroa-López's cellphone. *See* Gov. Exhibit Nos. 11, 18, 21 and 22. As such, the Government has raised concern that "[b]ecause Figueroa has had contact with at least some of the victims who are potential witnesses . . . Figueroa could pose a danger to them if released." Docket No. 116 at p. 9. In addition, the Government is concerned that given the defendant's access to ammunitions and firearms, he could represent a danger to the community if released while awaiting trial. *See id.* Importantly, the Government also proffered that the amount attributable from Figueroa-López from this fraud scheme is $163,710.00, certainly a significant amount of money.

### III.   CONCLUSION

Upon a careful review of all the evidence as the § 3142(g) factors and all available release conditions, the Court finds that the Government has shown by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the

victims who are potential witnesses and the community if Figueroa-López is released. The threat, nature and circumstances of the offenses charged including potential penalties, weight of the evidence and potential danger to the community, as well as Figueroa-López's potential access to illegal weapons, significantly outweighs the elements raised by the defendant as to his history and characteristics in favor of release. As such, the totality of the evidence presented at the *de novo* hearing require detention.

For the aforementioned reasons, the Court hereby **DENIES** Defendant Josue Figueroa-López's *de novo* bail request under the standards of the Bail Reform Act until the verdict in this case. *See* 18 U.S.C. § 3143. Therefore, the *Order of Detention Pending Trial* issued by U.S. Magistrate Judge Giselle López-Soler on November 10, 2022 (Docket No. 67) is hereby **AFFIRMED.** Defendant Figueroa-López shall accordingly remain detained without bail pending trial.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 6th day of February, 2023.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge